IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

STEPHANIE L. GUERRA,

               Plaintiff,

    Vs.

                                 No. 11-2535-SAC

MICHAEL J. ASTURE,
Commissioner of Social Security,

               Defendant.

MEMORANDUM AND ORDER

       This is an action to review the final decision of the defendant Commissioner of Social Security ("Commissioner") denying the claimant Stephanie L. Guerra's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") and for supplemental security income ("SSI") under Title XVI of the Act. With the administrative record (Dk. 3) and the parties' briefs on file pursuant to D. Kan. Rule 83.7.1, (Dks. 6, 11, and 12), the case is ripe for review and decision.

**STANDARD OF REVIEW**

       The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will

"meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant

is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id.* Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The evaluation at steps four and five makes use of the agency's RFC assessment. *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). To meet his burden at step five, the Commissioner may rely on the Medical–Vocational Guidelines (grids). 20 C.F.R. Part 404, Subpt. P, App. 2. *Williams v. Bowen*, 844 F .2d 748, 751 (10th Cir. 1988). The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience. *Thompson*, 987 F.2d at 1487.

**PROCEDURAL HISTORY**

Following a hearing at which Stephanie Guerra was represented by

counsel, the administrative law judge ("ALJ") issued his decision on February 12, 2010. (R. 8-19). Guerra alleged she has been disabled since January 1, 2005, and she had coverage to remain insured through March 31, 2009. (R. 8). At step one, the ALJ found that Guerra had not engaged in substantial gainful activity since January 1, 2005. (R. 10). At step two, the ALJ found Guerra had the severe impairments of "(1) Degenerative disc disease, lumbar spine, (2) Fibromyalgia, (3) Chronic obstructive pulmonary disease, and (4) Obesity." *Id.* The ALJ found at this stage that Guerra also suffered from "(1) Depressive disorder, not otherwise specified, non-severe on medication, (2) Hearing loss, non-severe with hearing aid, (3) Antiphospholipid syndrome, and (4) Fibroid tumors with bleedings, status post August 2008 hysterectomy, which are not severe." *Id.* The ALJ found at step three that Guerra's impairments did not meet or equal a listed impairment. (R. 11-13). At step four, the ALJ determined that Guerra had the RFC to perform the full range of sedentary work and that she is unable to perform any past relevant work as a cook, medium work. (R. 13-18). Applying the Medical-Vocational guidelines based on findings that Guerra's age, education, work experience, and a RFC for a full range of sedentary work, the ALJ relied the "not disabled" finding directed by the guidelines. (R. 18-19).

**ISSUE ONE: ARE THE ALJ'S FINDINGS ON THE CREDIBILITY OF GUERRA'S SUBJECTIVE COMPLAINTS SUPPORTED BY SUBSTANTIAL EVIDENCE?**

The ALJ states that he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. 13). He outlined the two stages for considering the claimant's stated symptoms:   (1) determine if there is a medically determinable impairment "that could reasonably be expected to produce the claimant's pain or other symptoms" and (2) "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms" on ability to work. *Id*. He also acknowledged that in evaluating statements on the second stage that are not substantiated by objective medical evidence, then he "must make a finding on the credibility of the statements based on a consideration of the entire case record." *Id*.

The ALJ here found the first stage met in that Guerra's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 14). The ALJ, however, found that Guerra's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." *Id.* Guerra argues that the ALJ's credibility findings lack specificity and fail the legal standards governing credibility evaluations. The Commissioner defends based on the ALJ's discussion and summary of the consulting physician's statements and Guerra's statements about daily activities. From that, the Commissioner draws out the apparent

6

inconsistencies between the Guerra's claimed limitations and the objective medical evidence of her conditions in addition to other evidence of Guerra's daily activities. The Commissioner concludes that ALJ had "articulated the inconsistences on which he relied in discrediting Plaintiff's subjective complaints." (Dk. 11, p. 9).

This court recognizes that credibility determinations peculiarly fall within the province of the fact finder, and these determinations are not to be upset when supported by substantial evidence. At the same time, courts should expect credibility findings to be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). It is not within the ALJ's discretion simply to ignore evidence favorable to the plaintiff. *Owen v. Chater*, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

The analysis of pain evidence does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in *Kepler*. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Nor must the ALJ discuss every relevant factor in evaluating pain testimony. *Bates v. Barnhart*, 222 F. Supp. 2d 1252, 1260 (D. Kan. 2002). It is enough that the ALJ explain and support with substantial

evidence which part(s) of the claimant's testimony were not believed and why. *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002). On the other hand, resort to standard boilerplate language without supporting citations of specific evidence will not suffice for credibility findings. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). It is sufficient when the ALJ's credibility determination is more than boilerplate and is linked to specific findings of fact fairly derived from the record. *White*, 287 F.3d at 909–910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. *Hackett v. Barnhart*, 395 F.3d at 1173. The court only reviews the sufficiency of the evidence. Although a different finding may be sustained by the evidence, the court may not supplant "the agency's choice between two fairly conflicting views" even if the court may have chosen differently in the first instance. *Oldham v. Astrue*, 509 F.3d 1254, 1257–1258 (10th Cir.2007). A claimant's statements regarding pain are necessarily subjective and "can be evaluated only on the basis of credibility." *Thompson v. Sullivan*, 987 F.2d at 1488–89. As such, "[subjective] statements regarding the intensity and persistence of the pain must be consistent with the medical findings and signs." *Gossett v. Bowen*, 862 F.2d at 806. "While the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, . . . a lack of objective corroboration of the pain's severity cannot justify disregarding the

8

allegations." *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004). The credibility determination of claimant's subjective complaints should include considering an "individual's daily activities;" the "location, duration, frequency, and intensity of the individual's pain;" the "dosage and effectiveness of medications taken to alleviate pain;" "the type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate pain or other symptoms;" and "[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." *Hamlin v. Barnhart*, 365 F.3d at 1220.

The ALJ's credibility determination was that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" an RFC for a full range of sedentary work. The ALJ's decision certainly contains boilerplate language that is strikingly similar to the credibility findings discussed in *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167-68 (10th Cir. 2012), and *Wall v. Astrue*, 561 F.3d at 1069-70. In *Wall*, the court said this about the ALJ's statement:

> [T]he ALJ's statement that Claimant's daily limitations could not be "objectively verified with any reasonable degree of certainty" did not state a standard by which the ALJ made his adverse determination of Claimant's credibility. *Id.* Rather, the ALJ's statement was merely a common sense observation that the ALJ would not treat Claimant's testimony as "strong evidence" of her disability due to his prior determination that Claimant's testimony was not "fully credible." *Id.*

561 F.3d at 1070. In much the same fashion, the court in *Keyes-Zachary*

construed this finding as the ALJ discussing "the lack of objective verification

as a factor in assessing the value of Ms. Keyes-Zachary's hearing testimony

concerning her limited daily activities." 695 F.3d at 1168. In construing the

ALJ's statements in this way, the appellate panels also looked at the ALJs'

other findings that expressly discussed other credibility factors and that also

tied those findings to evidence of record. *Keyes-Zachary*, 695 F.3d at

1167-68; *Wall*, 561 F.3d at 1070. In its evaluation of this statement, the panel

in *Wall* even reiterated:

> We recognize that an ALJ's credibility determination must be
> "closely and affirmatively linked" to substantial record evidence.
> *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004). In this
> case, the ALJ did just that. In his decision, the ALJ clearly and
> affirmatively linked his adverse determination of Claimant's credibility to
> substantial record evidence indicating Claimant engaged in malingering
> and misrepresentation. . . . Our precedents do not require more, and our
> "limited scope of review precludes [us] from reweighing the evidence or
> substituting [our] judgment for that of the" agency.

561 F.3d at 1070 (citation omitted).

What distinguishes the ALJ's use of this boilerplate language here

from that upheld in *Wall* and *Keyes-Zachary* is that it is not supported by other

credibility findings closely and affirmatively linked to specific evidence of

record. The ALJ's decision does highlight portions of Guerra's function report,

but the decision does not discuss what the ALJ considers to be inconsistencies

with her alleged impairments. On the function report, Guerra did check the box

that she prepared her own meals and explained that she prepared "quick stuff" and that her condition keeps her from cooking and baking as she did before. (R. 157). Guerra reported that she did "laundry-little sweeping and mop" for "about 30 min or so need to take breaks" and that she does not need help or encouragement to do these limited activities. (R. 157). Guerra reported she goes shopping once a week for "about 20 minutes or so" for "food, clothes personals." (R. 158). It is not apparent to the court how these self-reported activities are inconsistent with the plaintiff's alleged impairments of back pain, fibromyalgia, increased need for muscle relaxers and pain relievers, and the side effects of these medications. "[M]inimal or sporadic performance" of daily living activities can "be an insufficient basis for an adverse credibility finding." *Cobb v. Astrue*, 364 Fed. Appx. 445, 450, 2010 WL 381614 (10th Cir. Feb. 4, 2010) (citations omitted).

Guerra correctly challenges the ALJ's credibility finding as conclusory and lacking specificity. In short, the ALJ's decision does not explain what of the claimant's testimony on limited activities and chronic pain was rejected as not credible. Nor does the decision link any specific evidence of record to support the vague credibility finding. There is no evidence of "other reasons" in the record to "attribute" Guerra's stated degree of limitation. (R. 14). The bare reference to "other factors discussed in this decision" simply will not suffice. *Id*.

The claimant also argues her reports of pain are "well documented" in her treatment records. (Dk. 6, p. 20). The ALJ's decision does not give the court any reason to think that these treatment records, in particular the consistent prescription of significant pain medications and muscle relaxants, were even considered in regards to the credibility findings. Instead, the ALJ did not even acknowledge the relevance of those records for that purpose:   "The undersigned has reviewed the treatment evidence of record, finding no residual functional capacity analyses or opinions therein, and therefore has assigned limited weight to these reports." (R. 14). The court found ample reports in the record of chronic pain and repeated prescriptions for significant pain medications and muscle relaxants. *See Hamlin*, 365 F.3d at 1221–22 (holding that evidence relied on by ALJ was insufficient to undermine pain allegations where medical records were "replete with [claimant's] reports of pain and of prescriptions"). The consultative examination report even indicates the Guerra developed "mild pain during the exam." (R. 390).

The Commissioner would have the court assume credibility findings by the ALJ based on what the Commissioner now argues as alleged inconsistencies between the Guerra's subjective complaints and the medical record. The court is not saying that there may times when such inferences are appropriate based on the entirety of the ALJ's discussion, the uncontroverted medical evidence of record, and the detailed findings that support the

12

conclusion of no disability. This case does not present such a confluence of circumstances here. *See Cobb v. Astrue*, 364 Fed. Appx. at 450 ("[T]aking the decision as a whole, it is clear enough what portions of Ms. Cobb's testimony he credited and what portions he did not, and why, without violating the general rule against post hoc justification of administrative action . . . ." (internal quotation marks and citation omitted)).   More importantly, the credibility of the plaintiff's subjective complaints of pain, pain medications and other symptoms is certainly critical to the next issue on appeal. In short, the court does not find that the ALJ's credibility findings are closely and affirmatively linked to substantial evidence.

**ISSUE TWO:   IS THE ALJ'S RFC FINDING SUPPORTED BY SUBSTANTIAL EVIDENCE?**

The ALJ found that plaintiff had the RFC to perform the full range of sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(1) (R. at 13). Guerra contends that in making this finding the ALJ failed to consider "the impact" of her "non-exertional limitations, including her COPD—which limited her ability to be exposed to dust, fumes, and areas of poor ventilation—her hearing limitations, her pain associated with her degenerative disc disease and fibromyalgia, and her obesity." (Dk. 6, p. 14). She points out that the ALJ found the degenerative disc disease, fibromyalgia, COPD, and obesity to be "severe impairments" having "more than a minimal effect on the claimant's ability to perform work related functions." (R. 10). She notes that Dr. Madden's

RFC assessment, to which the ALJ assigned "significant weight" (R. 17), found that Guerra had "limited" hearing and that she should "avoid even moderate exposure" to "fumes, odors, dusts, and gases. (R. 234). In short, Guerra contends the ALJ's decision lacks meaningful analysis of the impact of these nonexertional impairments resulting in reversible error.

On this issue, the oft-stated standard followed by this court is:

> According to SSR 96–8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96–8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); *Sullivan v. Zebley*, 493 U.S. 521, 530 n. 9, 110 S.Ct. 885, 891 n. 9, 107 L.Ed.2d 967 (1990); *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir.1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. *See Southard v. Barnhart*, 72 Fed. Appx. 781, 784–785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. *Spicer v. Barnhart*, 64 Fed. Appx. 173, 177–178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. *Cruse v. U.S. Dept. of Health & Human Services*, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96–8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. *Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

*Sanjean v. Astrue*, 2013 WL 27782, at *2 (D. Kan. 2013).   It is a requirement of SSR 96-8p, that "[t]he adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." 1996 WL 374184 at *7.

While the ALJ's decision summarizes the consulting physician's opinions and reports and quotes extensively from the same, the decision offers little as a narrative discussion of the RFC assessment. *See Forbes v. Barnhart*, 2006 WL 4050696 at *5 (D. Kan. 2006). There is no real discussion of Guerra's "ability to perform sustained work activities in an ordinary work setting." SSR 96-8p, 1996 WL 374184 at *7. Nor is there any description of "the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* The ALJ summarizes from Dr. Madden's assessment that Guerra "should avoid even moderate exposure to fumes, odors, dusts gases, poor ventilation, etc," but then quotes from Dr. Madden's narrative that Guerra "has no diagnosis of COP other than some bronchitis and allergies which she does not take medication for." (R. 16). The ALJ does not address this ambiguity in Dr. Madden's reports, its resolution, or its impact on the RFC assessment.

Another SSR provides "adjudicative guidance as to the impact of various RFC limitations and restrictions on the unskilled sedentary occupational base." SSR 96-9p, 1996 WL 374185 at *5. It provides:

15

The RFC assessment must include a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in file was considered in the assessment. The individual's maximum remaining capacities to perform sustained work on a regular and continuing basis (what he or she can still do 8 hours a day, for 5 days a week or an equivalent work schedule) must be stated.

An accurate accounting of an individual's abilities, limitations, and restrictions is necessary to determine the extent of erosion of the occupational base, the types of sedentary occupations an individual might still be able to do, and whether it will be necessary to make use of a vocational resource. The RFC assessment must be sufficiently complete to allow an adjudicator to make an informed judgment regarding these issues.

1996 WL 374185 at *5-*6.

Guerra's contentions are well taken that the ALJ's RFC assessment lacks a meaningful determination and analysis of whether her environmental and hearing limitations, as well as her pain and pain medications, erode the occupational base of sedentary work as to make a vocational resource necessary. On environmental limitations, Dr. Madden marked that Guerra was to avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (R. 234). The ALJ adopted Dr. Madden's assessment but did not address this limitation in the RFC determination. According to SSR 96-9p, "[r]estrictions to avoid exposure to odors or dust must also be evaluated on an individual basis. The RFC assessment must specify which environments are restricted and state the extent of the restriction; e.g., whether only excessive or even small amounts of dust must be avoided." 1996 WL 374185 at *9. The ALJ failed to make an individual evaluation of the impact from this

environmental restriction.

As far as Guerra's hearing loss, the ALJ's only evaluative comment is that it is "non-severe with hearing aid" and "that the residual functional capacity adopted here more than fully accommodates any minimal limitations that the claimant may have because of these conditions." (R. 10-11). Among the communicative limitations discussed in SSR 96-9p, "[t]he ability to hear and understand simple oral instructions or to communicate simple information is sufficient. If the individual retains these basic communication abilities, the unskilled sedentary occupational base would not be significantly eroded in these areas." 1996 WL 374185 at *8. Dr. Madden checked the box that Guerra had a hearing limitation but also noted her word recognition was 96%. (R. 234-35). A physician's treatment record from an initial physical examination in 2006 reported:    "Hard of hearing, need to talk to her face to face otherwise she cannot understand and gets lost due to hearing impairment." (R. 260). Dr. Leung who did the consultative examination similarly observed that Guerra "was moderately hard of hearing. I did need to speak louder and did need to repeat myself." (R. 392). Though the evidence of record certainly points to the claimant's hearing loss being a communicative limitation even under normal background noise, the ALJ's decision offers no meaningful discussion or determination of what extent this limitation would erode the occupational base.

17

Guerra further asserts that the ALJ failed to include her obesity in his RFC determination. While finding obesity to be "a severe impairment," the ALJ concluded that it, "alone or in combination with her other impairments, fails to meet or medically equal a listed impairment." (R. 11). The ALJ found at step two that the claimant's obesity was a severe impairment, but did not consider its effects on her other impairments and her ability to perform work at step four. As Guerra notes, the ALJ wholly failed to discuss whether any of the medical evidence or testimony demonstrated any additional and cumulative effects at step four. *See, e.g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741–42 (10th Cir.2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC." (citing Titles II & XVI: Evaluation of Obesity, SSR 02–1p, 2000 WL 628049, at *1, *5-*6, *7 (Sept. 12, 2002))). Contrary to the Commissioner's position, the matter was sufficiently raised because the ALJ found her obesity to be a severe impairment. *DeWitt v. Astrue*, 381 Fed. Appx. 782, 785-86 (10th Cir. 2010). The ALJ's decision simply does not show any consideration of Guerra's obesity in evaluating RFC. *See DeWitt v. Astrue*, 381 Fed. Appx. at 785 ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's

18

decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather, it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments'-a process forbidden by SSR 02-1p. See 2000 WL 628049 at *6."); *Patrick v. Astrue*, 2012 WL 4480609 at *3 (E.D. Okla. 2012).

In summary, the court concludes the ALJ failed to comply with SSR 96-8p, SSR 96-9p and SSR 02-1p in making his RFC findings. The ALJ ignored evidence of record as to nonexertional limitations that are likely to erode the occupational base of sedentary work. Thus, the court cannot conclude that the RFC findings are supported by substantial evidence. On remand, the ALJ must consider all of the available medical evidence and assess with a thorough and reasoned analysis the effect of all of Guerra's impairments on her RFC.

**ISSUE THREE:   DID THE ALJ PROPERLY USE THE MEDICAL-VOCATIONAL GUIDELINES IN DIRECTING A FINDING THAT THE PLAINTIFF WAS NOT DISABLED?**

The ALJ concluded that, "[b]ased on a residual functional capacity for the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical–Vocational Rule 201.25 and Rule 201.19." (R. at 19). Guerra contends the ALJ erred in relying exclusively on the guidelines without addressing the impact of

nonexertional impairments on her ability to perform a full range of sedentary

work.

The Tenth Circuit recently summarized the law governing this

issue:

> Generally, the grids may not be used conclusively if the claimant has nonexertional impairments that limit the ability to do the full range of work within a classification. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). "Moreover, resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments." *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir.1991).
>
> However, it is equally clear in our circuit that "[t]he mere presence of a nonexertional impairment does not preclude reliance on the grids." *Thompson*, 987 F.2d at 1488. The nonexertional impairment "must interfere with the ability to work." *Id.* Use of the grids is foreclosed only where the "nonexertional impairments are significant enough to limit [the claimant's] ability to perform the full range of jobs" available. *Channel v. Heckler*, 747 F.2d 577, 583 (10th Cir. 1984). In fact, the grids may be used for claimants with nonexertional impairments "whenever the claimant can perform a substantial majority of the work in the designated [residual functional capacity] category." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). While an ALJ may determine that a nonexertional impairment has only a negligible effect on the range of jobs available, he "must back such a finding of negligible effect with the evidence to substantiate it." *Talbot v. Heckler*, 814 F.2d 1456, 1465 (10th Cir. 1987).

*Mitchell v. Astrue,* 2012 WL 4478369 at *1 (10th Cir. 2012). Guerra correctly

argues that the ALJ failed to support his use of the grids with any meaningful

discussion of her environmental limitation, hearing loss, obesity and pain, and

with any evaluation of Guerra's continuing ability to perform a substantial

majority of sedentary work. While the ALJ did quote the applicable rule for

using the grids, he did not make any applicable finding or offer evidence to

sustain such a finding. Without such specific findings supported by substantial evidence, the ALJ may not conclusively apply the grids in determining that the plaintiff was not disabled. *Martin-Best v. Astrue*, 2011 WL 2971826 at *12 (N.D. Okla. 2011).

The plaintiff seeks to have the Commissioner's decision reversed with instructions to grant her claim for benefits. A key factor in remanding for further proceedings is whether it would serve a useful purpose or would merely delay the receipt of benefits. *Harris v. Secretary of Health & Human Services*, 821 F.2d 541, 545 (10th Cir. 1987). Thus, relevant factors to consider are the length of time the matter has been pending, and whether or not, given the available evidence, remand for additional fact-finding would serve any useful purpose, or would merely delay the receipt of benefits. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). The decision that directs an award of benefits is justified when the administrative record is fully developed and when the substantial, uncontroverted evidence of record indicates the claimant is disabled and entitled to benefits. *Gilliland v. Heckler*, 786 F.2d 178, 184, 185 (3rd Cir. 1986). The court, however, cannot say the evidence here necessarily establishes the plaintiff was disabled for the time period in question. Indeed, there is no medical opinion of record stating that the claimant is disabled. The court finds that a remand would be useful to comply with the requirements of the social security rulings discussed above, to address all relevant evidence on

21

credibility, to include all impairments in the RFC assessment, and to make the required findings to sustain the use of the grids or to obtain vocational expert testimony.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 16th day of January, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge